PAUL GREENFIELD, *In Pro Per*
2597 Flagstone
San Jose, CA 95132
Telephone: (408) 691-0016

Interested Party and Creditor,
*In Pro Per*




ORIGINAL
FILED
AUG 2 8 2018
CLERK
United States Bankruptcy Court
San Jose, California

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No.    18-50909-MEH-11 |
| GREGORY BELCHER, | Chapter 11 |
| Debtors. | **PAUL GREENFIELD'S JOINDER TO MOTION TO DISMISS OR CONVERT CASE** |
| | Date:    August 30, 2018<br>Time:    10:30 am<br>Place:    280 South First Street<br>San Jose, California |
| | Honorable M. Elaine Hammond |

COMES NOW Paul Greenfield, an interested party and creditor herein, joining Dakota Notes' Motion for dismissal or conversion to a case under chapter 7, and objecting to the "Statement of Broker & Debtor," filed August 17, 2018 [Docket No. 79].

<u>Introduction</u>

This case was commenced on April 24, with the filing of a "skeleton" petition, on the eve of a foreclosure sale. This is the second case commenced by Dr. Belcher, individually (Case No. 17-52528-SLJ-11 on 10/18/2017; and the instant matter), and the third, since October 2017, filed by him as either an individual or as the responsible party for his wholly owned LLC (Case No. 18-

1

50672-MEH-11 on 3/28/2018).[1]  As with the instant case, each of these prior cases, was commenced to stall either foreclosure actions or an unlawful detainer action by his creditors.  And, each of the prior two cases were filed and dismissed for inactivity, for failing to file complete petitions.

This court has continued the Motion to Dismiss, and granted an extension of the automatic stay, on the basis of the Debtor's earnest attempts to sell the property, located at 22000 Dorsey, Saratoga, California.  While I remained skeptical of the suggested property values as proposed by the Realtors, I was of course willing to give Dr. Belcher an opportunity to realize some equity, if any.  Unfortunately, we are now four months into the case, and Dr. Belcher is neither making any payments on his obligations, nor is his team making any progress on selling the home.  I respectfully submit that this case, like the two prior, were filed for the sole purpose of delaying the inevitable, rather than delivering on any feasible chapter 11 plan.

11 U.S.C. § 1112(b)(4) defines what constitutes "cause" to convert or dismiss a chapter 11 case.  Here, the record provides evidence of several indicators, on several occasions.

### Background

This case was commenced on April 24, 2018, with the filing of yet another "skeleton" petition.

On May 10, creditor Dakota Note filed its Motion to Dismiss [Docket No. 14], on the basis that Debtor's filing was in bad faith.

On May 14, in response to Dakota's Motion, Debtor filed a series of amended schedules, and, on May 17, filed an emergency Motion to extend the Automatic Stay. [Docket No. 25].

### The Realtors

On May 23, Debtor further filed an application to employ "Realtor" Teresa Katherine Owens, to sell the subject property. [Docket No. 35].

After this Court instructed Debtor's counsel that the application to employ was defective, a new application was filed on June 6, and in support of same, Ms. Owens submitted a declaration

---

[1] Of note, Mr. Knight, Debtor's current attorney, was also the attorney of record for the LLC, and claimed, wrongly, that it was the vested title holder to the subject property.

Case: 18-50909    Doc# 88    Filed: 08/28/18    Entered: 08/28/18 13:35:38    Page 2 of 5

[Docket No. 47], under penalty of perjury, attesting to several demonstrably false facts, to wit: 1) that she is a licensed Realtor; 2) that she is self-employed with "extensive experience" selling homes in the Saratoga Area; and, 3) that neither she, nor anyone in her employ, "has any connection with [the debtor]…" nor did she "have an interest materially adverse to the interest of the Debtor, the estate, or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor." It was quickly discovered that Ms. Owens was not properly credentialled, and was not legally capable of acting as a Realtor; that she was not self-employed, and could not produce any history of selling or leasing homes in the Saratoga area; and, most egregiously, that Ms. Owens was a tenant of Dr. Belcher's in a property in Los Angeles that had just been lost to foreclosure prior to the filing of the instant case – even though he continues to claim it on his schedules - and may even be related to Dr. Belcher.

Dr. Belcher knew or should have known, that Ms. Owens was not licensed; and certainly knew that she had a connection to the estate, given that she was his tenant.

On June 24, Debtor filed a new application to employ a new set of Realtors. [Docket No. 58]. Yet again, and inexplicably, the application proposed to employ brokers from well outside the geographic area, with little or no verifiable experience with the market area, or the high-end nature of the subject property.

At the July 12 hearing, this Court granted an extension of the automatic stay and once more continued Dakota's Motion to Dismiss, and the Status Conference. The Court verbally admonished the Debtor and his Realtors to make periodic reports of their marketing of the property, and to express the number of leads, open houses, and other marketing efforts.

On July 24, Debtor filed such a marketing statement, informing the Court that "Dorsey is now listed on MLS…." And "We will be updating photographic presentation in the next two weeks." [Docket No. 77].

Now, *one month later*, the Realtors have filed a new status report tacitly acknowledging that there have been NO marketing efforts, that there have NOT been any showings or open houses, nor does the report indicate any interested parties. The status report simply indicates that a cleaning crew is required to make the property presentable for a "photographic presentation," whatever that

Case: 18-50909    Doc# 88    Filed: 08/28/18    Entered: 08/28/18 13:35:38    Page 3 of 5

means. [2]

On August 19, I drove by the subject property. To no surprise, found that there was no "For Sale" sign in front of the home. A true and correct copy of photos taken on August 19, are attached as Exhibit A to the Declaration of Paul Greenfield. Furthermore, according to Realtor.com and other sites, there are no scheduled open homes. See Greenfield Declaration, Exhibit B.

On August 22, I directed a friend to notify the Realtor, Ramin Bihala, to ask for access to view the property. Mr. Bihala replied that the property could be viewed "soon," adding that "the court has allowed seller to clean up so it can be shown." See Greenfield Declaration, Exhibit C. I note that the Court has issued no such order, and that there has been nothing precluding a showing of the property in the past 6 weeks, since Mr. Bihala was employed by the estate – despite the Executive Summary he filed wherein he claimed that the property would have "as many open houses that can fit the schedule of he home owner…" and that "we can expect [a]…close of escrow within…6 months….[but] would to be surprised to close within as little as 90 days…." [Docket No. 69] (Page 12, last full paragraph).

It is clear, that in contravention of this Court's order, the Debtor is not making any substantive efforts to sell the property, but is rather delaying the sale through unengaged, distant Realtors, refusals to show the property, no open houses, and manufactured reasons to delay the marketing: to wit, the "need" to clean the property. And why not? He has moved into the subject property and is living for free.

<u>Lack of Equity</u>

There is little to no equity in the property and certainly nothing for the Debtor. This may be the true cause for the anemic marketing efforts. Even if the property were to sell for $5,400,000 – which is a stretch in this market and in its current condition – after closing costs, the gross proceeds would be approximately $400,000, which would be subject to the unsecured creditors,

---

[2] A quick view of https://www.realtor.com/realestateandhomes-detail/22000-Dorsey-Way_Saratoga_CA_95070_M24646-50871#photo0 shows that there are 13 photos of the property listed.

4

Dr. Belcher's extensive legal bills, and, of course, taxes. See Greenfield Declaration. The delta between the value of the subject property and its secured debt narrows, monthly, to the tune of at least $25,000.

Debtor-in-Possession Requirements

11 U.S.C. § 1112(b)(4)(F) provides cause as "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." Dr. Belcher has not filed a single monthly operating report as required under the Bankruptcy Code, nor has there been any evidence that a Debtor in Possession account has been established. Furthermore, Dr. Belcher failed to appear at his continued 341 meeting on June 19, 2018. This, too, is an indicia of "cause," under § 1112(b)(4)(G).

Conclusion

I am certain that, now that these deficiencies have been brought to the Court's attention, the Debtor will quickly find a way to address these issues; but, at what point is the Debtor made to answer for his varied Chapter 11 sins? This Debtor has not made a single post-petition payment, but is guilty of numerous bad faith filings; inaccurate, misleading schedules; the attempted employment of a friend as a "Realtor", despite her not having a license and actively concealing an interest in the case; hiring new Realtors who are not marketing the property despite this Court's prior order; and, failing to perform his fiduciary duties to his creditors.

Given Debtor's clear bad faith, I pray that this Court grant Dakota Notes' Motion to Dismiss the case. In the alternative, I request that this Court direct Debtor to begin making payments towards its mortgage, so that the property is not being continually stripped of equity every month. [3]

DATED: August 27, 2018

Respectfully Submitted,

By: _Paul Greenfield_
Paul Greenfield, Interested Party and Creditor

---

[3] The Debtor has recently filed his "Statement of Periodic Report", wherein, despite its being incomplete, he claims to be earning as much as $11,000 per month.